Johnston, Ch.
delivered the opinion of the Court.
This case has been, already, three times before this Court; and cpmes up, now, the fourth time', upon points which either have been, or should have been, long ago, adjudicated and settled.
The motion brought under consideration by the present appeal, is that Thomas Dawson, the executor of Richard Dawson, the elder, do, at the instance of Richard P. Dawson, a grandson, and Samuel R. McKensie, a son in law of the said Richard, (the wife of McKensie being dead,) account for so much of all the property acquired by the said Richard, after the execution of his deed of 1821, and of the profits thereof, and of the ciop of 1840, as has not been heretofore accounted for.
The motion further proposes to refer to the Commissioner certain equities claimed by Thomas Dawson, as legatee of Richard Dawson, the elder; and that if the same be allowed, the Commissioner report the balance remaining in thehandsof said Thomas, as executor, for distribution among the legatees and distributees of his testator.
Whether Richard P. Dawson and Samuel R. McKensie are entitled to appeal from the judgment of the Chancellor refusing their motion, depends entirely upon their right to claim the account moved for 5 and that depends upon their interests in the property and funds proposed to be embraced in the account. ’
A recurrence to the case, which is stated at large in the original decree of 1835, affirmed on appeal at February term 1839, will assist us in deciding these questions.
lb. 250.
Ib
Ib. 249.
The substance of the case, thus stated, is, that Richard Dawson, the elder, executed a will dated the 2d of May, 1820, by the first five clauses of which he devised all the real estate he then, possessed, (and he never afterwards acquired any additional real estate,) in certain designated portions to his four sons, Richaid, Thomas, Josiah and John, with limitations over to their male issue; except two small tracts, which he devised to all his children, males and females, in common.
By the 6th clause he “ bequeathed unto his four beloved sons, Richard, Thomas, Josiah and John, and to his three beloved daughters, Jane Wells, Providence Taylor, (married women) and Rebecca Ann Dawson, (subsequently married to Samuel R. McKensie,) all his personal property, consisting of negroes, horses, cattle, sheep, hogs, <fcc. share and share alike,” &c.
The will contains certain limitations over, &c. Then on the 3d June, 1821, he conveyed, by deed, the whole of his estate, real and personal, to the children named in the aforesaid will, to be enjoyed by them according to the tenor of said will; and appointed his son, Thomas, trustee under said deed.
On the 5th of July, 1836, he executed a codicil to his will, the provisions of which it is not necessary to notice.
By a codicil dated the 9th of August, 1836, referring to the will of May, 1820, ho “revokes and makes void the devises and bequests in said will contained,” to his sons, John and Richard, and their children.
From the children of Richard, thus excluded, he, however, excepts his (Richard’s) son Richard P. Dawson, to whom he devises and bequeaths two tracts of land, described in the codicil, and “ six negroes, to be designated by his executor, of a fair average value with his other negroes,” &c. “to him and his heirs, forever.”
Then he proceeds to dispose of what he had by the will given to John and Richard; and after devising to Thomas, Woodbine Cot, and sundry other tracts of land, and 37 negroes by name ; and to Septimus, (a son of Thomas,) a parcel of land called Oak forest, he concludes in the following words : “ The residue of the property, real and personal, devised and bequeathed by my will aforesaid, to my sons John and Richard, and their children, not disposed of by this codicil, I give, devise and bequeath as follows: to my sons Thomas and. Josiah, I give, devise and bequeath the whole of the real estate, share and share alike, to them and their heirs, forever ; to my said sons, Thomas and Josiah, and my daughter Rebecca A. McKensie, (formerly Dawson,) I give and bequeath the personal property, share and share alike, to them and their heirs, forever.”
In the original decree it was held that the deed of 1821, *38 -was a valid disposition in pr asentí, of all Ihe property, real and personal, possessed by Richard Dawson, at its date, to take effect in enjoyment by bis childien, at his death, accord-lQ provisions of his will of May. 1820. That the trusts in favor of the children were vested at the date of the deed, but were to be enjoyed at his death, and that the intermediate interests resulted to the grantor himself, and entitled him to ap the profits which accrued during his life.
Rice Eq. 261. Cheves’ Eq. 156,7.
Rice’s Eq 262. Cheves’ Eq. 156-
This decree certainly disposed of all the real estate of the grantor and testator; and it also disposed of all the personalty of which he was possessed at the date of the deed. All these were regulated by the will of 1820, which was held to have been incorporated into the deed of 1821, exactly as if its terms had been transfered to, and inscribed in, that instrument. And about this body of property there is now no contest.
But after the execution of the deed, Richard Dawson, senr., acquired some thirty-nine negroes, referred to in the motion before us; and Richard P. Dawson and Samuel R. McKensie claim an account of them and their profits. What are their rights in relation to them ?
In the original decree it was intimated, and it was subse-qnently decided, that whether these negroes belonged to Richard Dawson, senr., depended upon the question whether he purchased them with the profits of the trust estate accruing after the execution of the deed, or by the employment of the corpus of that estate. In the former case they belonged to him ; in the latter, to the grantees under his deed.
If they belonged to the life tenant, they were subject to the dispositions of his will and codicils; and if these contained provisions sufficient to carry them, they must, necessarily, be disposed of accordingly.
It was explained, in language not easily misunderstood, that although the will of 1820, was incorporated with the deed of 1821, it was no further incorporated than as it related to property existing at the execution of the deed. So far it was necessary it should be incorporated in order that the deed should perform the appropriate function of a deed, by transfering and vesting an interest inprasenti in the property to which it related. But the will was neither revoked nor paralized. It remained a will, with all the functions of a will, in relation to every species of property, which, by its terms, it could carry, except that body of property taken out of its operation by the deed. As to all other property it remained as active and operative, as if no deed had ever been executed. And as to all property upon which it could act, it was subject to all the modifications of its provisions made by the codicils.
Upon the supposition then, that these after-acquired negroes were purchased with the profits of the life estate, and belong *39 ed to the life tenant, they must be disposed of by the will and codicils, if these will embrace them. If not, they are distri-1 butable as intestate property.
g r,g ^ %75.
The 6th clause of the will already recited, certainly embraces them, by which all the negroes of the testator are, in general terms, given to the four sons, Richard, Thomas, Josiah and John, and to the three daughters, Mrs. Wells, Mrs. Taylor, and Rebecca, afterwars Mrs. McKensie, share and share alike.
The codicil of August, 1836, leaving to Thomas and Josiah their respective shares, (being one-seventh each,) gives the shares of John and Richard, to Thomas, Josiah and Rebecca, share and share alike.
Thus we have gone over the whole ground. The result is, that Richard P. Dawson has no interest in these slaves. The only property given him by will or codicil, are the six slaves, mentioned in the codicil of August, 1836, already noticed; and as to these he has already been satisfied.
The motion implies that Mrs. McKensie’s share has not been received. But she is dead, and the question is whether her husband is entitled to the account claimed, or whether that account is not to be rendered to her administrator. Mr. Mc-Kensie has not taken out letters of administration on her estate , or, if he has, his motion is not made in his character of administrator.
It is said that he was a joint party with her to this suit, and that a decree has been obtained which survives to him, and entitles him to the account. But I think otherwise. The judgment of the Court was general, (i. e. relating to, and declaring, the right generally and even conditionally) and not specific and positive, so as to be enforcible for a specific amount or upon any particular chattel. The judgment was not complete. Where is the trace of a decree, that the executor account to McKensie and wife for this property? I think it would be difficult to say that such an adjudication as was made survives to the husband. If he wishes to proceed, he must administer, and file his supplemental bill to complete the proceedings.
I have said nothing of the crop of 1840; purposely confining myself to the slaves ; as to which the rights of these parties are more plain and obvious.
My opinion is that the motion was properly refused, and that the appeal should be dismissed ; and this being, also, the opinion of the Court, it is so ordered.
The whole Court concurred.

Motion refused.